UNsealed 4/28/20
Subject to collateral estoppel effects
to this instrument are
prohibited by court order.

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States District Court
Southern District of Texas
**FILED**

APR 10 2020

David J. Bradley, Clerk of Court

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
iPhone 10 and SIM card # ▮▮▮▮▮▮▮▮ )
phone # ▮▮▮▮▮▮1949 )
(Target Device) )

Case No. 13-20-331-MJ

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
a black and white, iPhone 10 cellular telephone, as described in Attachment A, located at ICE Harlingen, 1121 E. Austin Ave., Harlingen, TX 78552, in custody of ICE OPR Agent Benjamin Elizondo.

located in the ___Southern District___ District of ___Texas___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, attached and incorporated fully by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 201 and 18 USC 1001 | Bribery of a Public Officer |
| | Making False/Fraudulent Statements, |

The application is based on these facts:
See attached affidavit, Attachment C, attached and incorporated fully by reference herein.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Benjamin Elizondo, Senior Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 10, 2020

City and state: Brownsville, Texas

Ronald G. Morgan, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

The property to searched consists of one (1) cellular phone located at the ICE OPR Harlingen, 1121 E. Austin Ave, Harlingen, Texas 78552.

**Target Device:** white and black with silver-lining iPhone 10, bearing SIM card # ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, phone # ▮▮▮▮▮▮▮1949





**Target Device**

## ATTACHMENT B

**Items to be Searched**

A white and black with silver lining iPhone 10, bearing SIM card # ███████████, phone # ██████1949 and any attached or removable data storage devices located in/with "**Target Device**", (e.g. "chips" "SIM cards", flash memory cards), for information and data that relates to violations of 18 United States Code (USC) 201, Bribery of a Public Officer and 18 United States Code (USC) 1001, Making False/Fraudulent Statements, including but not limited to:

1. The phone numbers and/or direct connect and/or names and identities, including electronic mail addresses, usernames and passwords assigned to the device;

2. Digital, cellular, and/or telephone numbers and/or direct connect numbers, names and identities, including electronic mail addresses, usernames and passwords stored in the device and in any other electronic media attached to or found with the devices, including but not limited to, "chips," SIM cards and flash memory cards;

3. Phone numbers, direct connect numbers, electronic mail addresses. Internet Protocol addresses, and other accounts dialed or accessed using the device or otherwise communicating with or accessing the devices;

4. Voice messages, photographs, text messages, electronic mail messages, application "app" based messages and any other documents or information stored in the device's memory and/or the data storage hardware such as "chips", including but not limited to:

    a. any communications to and from phone number ██████1364, a phone number associated to Roel ALANIS.

    b. any communications to and from phone number ██████8239, a phone number associated to Damian ORTIZ.

    c. Any communications to and from phone number ██████7833, a phone number associated to former Alanis Law Firm Paralegal ███████████.

    d. any information related to rosters of detainees in Immigration and Customs Enforcement (ICE) detention.

    e. any information related to money payments related to violations of 18 United States Code (USC) 201, Bribery of a Public Officer and 18 United States Code (USC) 1001, Making False/Fraudulent Statements;

5. Evidence of user attribution showing who used or owned "**Target Device**", at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

6. Internet searches (search history), web browsing and downloads from the internet;

7. GPS, geographic location data, and mapping data;

8. Any deleted data for items listed in 1-7.

## ATTACHMENT C

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Benjamin Elizondo, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a white and black with silver-lining iPhone 10, bearing SIM card # ▉▉▉▉▉▉▉▉▉▉ and phone # ▉▉▉▉1949 (hereinafter "**Target Device**") "**Target Device**" was found in the possession of Cynthia ALANIS in Hidalgo County, TX. The "**Target Device**" is currently in the possession of Immigration and Customs Enforcement (ICE), Office of Professional Responsibility, 1121 E. Austin Ave, Harlingen, Texas 78550 (OPR Harlingen).

2. I am a Senior Special Agent (SSA) with U.S. ICE OPR in Harlingen, TX. As an SSA, I am responsible for conducting investigations pertaining to administrative and criminal misconduct by employees working for ICE and for other components of the Department of Homeland Security (DHS). I am also responsible for conducting investigations involving bribery of federal and public officials, and bribery of officials acting on behalf of the United States Government. Prior to ICE OPR, I worked as a Special Agent with Homeland Security Investigations (HSI), where I was responsible for conducting investigations into criminal violations of United States Federal Statutes. Prior to HSI, I worked as a United States Border Patrol (USBP) Agent. My combined tenure as a Federal Law Enforcement Agent spans more than fourteen years. My training for USBP Agent and HSI Special Agent included training in

investigation and enforcement of Federal Immigration and Criminal Statutes.

3. Based upon my training, experience, and participation in immigration, drug, gang and firearms investigations, I know:

## PROBABLE CAUSE

a) The following paragraphs are furnished to establish probable cause in support of this warrant:

b) On January 10, 2019, Special Agents assigned to the Immigration and Customs Enforcement (ICE) Office of Professional Responsibility in Harlingen, Texas, identified Damian ORTIZ, who was employed by Management and Training Corporation (MTC) at the Willacy County Regional Detention Center, Raymondville, TX (WCRDC Raymondville). ORTIZ was employed as a Senior Program Director at the facility.

c) In an interview with Special Agents, ORTIZ admitted that he and another individual named Benito BARRIENTEZ, who was employed as a Contract Security Officer (CSO) at the El Valle Detention Facility in Raymondville, were engaged in selling law enforcement sensitive detainee rosters to Roel ALANIS, a private immigration attorney. The El Valle Detention Facility is an ICE contracted detention facility.

d) ORTIZ stated Roel ALANIS would utilize the information on the detainee rosters to gain visitation access to ICE detainees to secure them as clients for the Alanis Law Firm, a law office owned and operated by Roel ALANIS. ORTIZ stated that on or about December 2017, Roel ALANIS offered to pay him money in exchange for detainee rosters. Ortiz stated that since December 2017, through his employment, acting alone and with the help of others, he had sold

approximately twenty detainee rosters to Roel ALANIS and stated he received monetary payment from Roel ALANIS on each occasion.

e) Between January 10th and January 14th, 2019, with consent to cooperate and under the direction of Special Agents, ORTIZ communicated with Roel ALANIS via text messaging regarding a detainee roster containing information of detainees housed at the Port Isabel Detention Center in Los Fresnos, Texas. The text messages were monitored by SSAs. ORTIZ utilized his cell phone (ending in ...8239). Roel ALANIS utilized phone number (ending in ...1364) in the communications. Roel ALANIS stated in text messages that he was interested in obtaining the detainee roster and stated he would pay ORTIZ $1000 in exchange for the roster.

f) The covert investigation was unexpectedly brought to a stop when on February 13, 2019, a Cameron County Sheriff's Office (CCSO) deputy conducted a traffic stop on Roel ALANIS for a traffic infraction. The traffic stop occurred near San Benito, Texas in Cameron County. A warrant check conducted by the CCSO deputy showed an active warrant of arrest for Roel ALANIS out of Lakeway Police Department, Lakeway, Texas. Roel ALANIS was placed under arrest and transported to CCSO for processing on the active warrant.

g) While Roel ALANIS was detained by CCSO, OPR Harlingen found two cellular phones in his possession which were a grey iPhone 6S plus Model: A1688, (ending in ...8999) and a grey iPhone X, (ending in ...1364).

h) With the investigation now overt, on February 21, 2019, OPR Harlingen Senior Special Agent (SSA) Benjamin Elizondo interviewed Cynthia ALANIS, who stated she was previously employed as an immigration attorney at the Alanis Law Firm. Cynthia ALANIS also stated she was Roel ALANIS' sister. Cynthia ALANIS stated she had not ever seen, received, nor did she have any knowledge of, any alien detainee roster lists given to the Alanis Law Firm.

i) On February 22, 2019, OPR Harlingen Special Agents requested and received a federal search and seizure warrant for the grey iPhone 6S plus Model (ending in …8999) and a grey iPhone X (ending in …1364).

j) On April 12, 2019, OPR Harlingen interviewed former CSO Benito BARRIENTEZ. BARRIENTEZ stated on one occasion, sometime in October 2018, he and ORTIZ went to have a lunch at Church's restaurant in Raymondville. After finishing their lunch, Ortiz mentioned that Roel was going to stop by. BARRIENTEZ stated that from inside the restaurant, he saw who he thought might have been Roel Alanis arrive accompanied by Cynthia ALANIS. BARRIENTEZ stated they arrived in a dark colored car with tinted windows. The male was driving and Cynthia ALANIS was in the passenger seat. BARRIENTEZ stated Ortiz then walked out of the restaurant and entered the vehicle with a detainee roster in hand.

k) On May 14, 2019, SSA Elizondo reviewed one of several Cellbrite Extraction reports obtained from one of Roel ALANIS' cellular phone (ending in …1364). The report detailed text messages between Roel ALANIS and a telephone associated to Cynthia ALANIS (**Target Device**). The messages were exchanged during the period between 8/15/2018 through 10/30/2018. The **Target Device** was listed in Roel ALANIS' cellular phone contact list under the contact name "Sis."

l) In the exchange of text messages, Roel ALANIS and the contact listed as "Sis" talked about visiting detainees at ICE facilities and exchanged the names and Alien registration numbers (A#s) of detainees, among other information. In addition, Roel ALANIS sent "Sis" picture messages consisting of images of several pages of ICE detainee roster lists from an ICE contracted detention center in Raymondville which contained ICE detainee names, A#s, date of birth, age, gender, ethnicity, bunk location, among other identifying criteria.

m) In an interview conducted on July 9, 2019, ORTIZ stated that he believed that Cynthia ALANIS had knowledge of the bribery scheme. CSO ORTIZ stated that on several occasions he met with Cynthia ALANIS and an Alanis Law Firm paralegal named ▮▮▮▮ to hand over the ICE detainee rosters to them. ORTIZ stated he recalled communicating with Cynthia ALANIS via his own cellular phone bearing telephone number (ending in ...8239). ORTIZ further stated that on the evening before he was arrested by OPR Harlingen, he spoke to Cynthia ALANIS regarding the exchange of ICE detainee rosters with her. (NOTE: ORTIZ was initially arrested by OPR Harlingen during the morning of January 10, 2019 at the Whataburger in Raymondville as part of an undercover operation against CSO ORTIZ.)

n) On July 11, 2019, OPR Harlingen interviewed ▮▮▮▮, a former employee at the Alanis Law Firm. ▮▮▮▮ stated Roel Alanis instructed him to receive ICE detainee rosters from Damian ORTIZ and at times would also pay ORTIZ for the lists on behalf of Roel Alanis. ▮▮▮▮ recalled at least one occasion where he and Cynthia ALANIS met Damian Ortiz at a Church's restaurant located in Raymondville where ORTIZ provided them with a copy of an ICE detainee roster from the El Valle Detention Facility. ▮▮▮▮ stated he and Cynthia ALANIS were in his BMW on that day, and he was the driver.

o) ▮▮▮▮ stated when they arrived at the Church's, ORTIZ exited the restaurant and then entered the backseat area of ▮▮▮▮'s car. Damian Ortiz then handed ▮▮▮▮ and Cynthia ALANIS an ICE detainee roster and began to look through it to and formulate a list of detainees they could visit. ▮▮▮▮ stated he recalled Cynthia ALANIS choosing five random detainee names to visit on that day as he himself had been taught to do by Roel ALANIS.

p) On September 10, 2019, OPR Harlingen requested and received subscriber and toll information for ORTIZ's cellular number (ending in …8239). SSA Elizondo reviewed the subpoena, which revealed several calls and text messages between ORTIZ's cellular phone and **"Target Device"** on January 9, 2019 and on the days leading up to January 9, 2019.

q) A review of a Cellbrite extraction report conducted on ORTIZ's cellular phone revealed deleted texts messages between ORTIZ's cellular phone and **"Target Device"** in which there is discussion of a meeting at a Whataburger between CSO ORTIZ, ▉▉▉▉▉▉ and the an individual in possession of **"Target Device"**.

r) Roel ALANIS, ORTIZ, BARRIENTEZ, former Contract Security Officer Exy GOMEZ and Cynthia ALANIS have all been identified as co-conspirators in the bribery scheme and have been indicted. ORTIZ and BARRIENTEZ have pleaded guilty and await sentencing.

s) On February 18, 2020, Cynthia ALANIS was indicted by a Federal Grand Jury in the Southern District of Texas for violating 18 USC 1001- Making False/Fraudulent Statements.

t) On February 24, 2020, Cynthia ALANIS was arrested subsequent to a federal arrest warrant. When Cynthia ALANIS was detained, **"Target Device"** was found in her possession.

u) Based on my training, experience, and research, I know that **"Target Device"** has the capability to allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC DEVICES AND STORAGE

4. This application seeks permission to search and seize things that **"Target Device"** might contain, in whatever form they are stored. Based on my knowledge, training, and

experience, I know that **"Target Device"** can store information for long periods of time. Even when a user deletes information from **"Target Device"** it can sometimes be recovered with forensics tools. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the **"Target Device"**. This information can sometimes be recovered with forensics tools.

5. Searching for the evidence described in Attachment B may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment A or perusing all stored information briefly to determine whether it falls within the scope of the warrant. Considering these difficulties, Homeland Security Investigations intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

## **METHODOLOGY**

Following the issuance of this warrant, I will collect and deliver **"Target Device"** to wireless telephone forensic examiners. These examiners will attempt to power **"Target Device"** identify whether it is protected by a personal identification number (PIN), determine or circumvent the PIN

and retrieve data from the device. Unlike typical computers, many wireless telephones do not have hard drives or hard drive equivalents and store information in volatile memory within "**Target Device**" in memory cards inserted into "**Target Device**". Current technology provides some solutions for acquiring some of the data stored in some wireless telephone models using forensic hardware and software. The forensic examiner will determine whether any data associated with "**Target Device**" may be so acquired and, if so, such data will be acquired forensically, and the follow-on examination will be conducted using the forensic copy. Even if some of the stored information on "**Target Device**" may be acquired forensically, not all of the data subject to seizure may be so acquired. If "**Target Device**" is not subject to forensic data acquisition or that has potentially relevant data stored that is not subject to such acquisition, the examiner must examine "**Target Device**" manually and record the process and the results using digital photography. This process is time and labor intensive and, depending upon the workload of the few wireless telephone forensic examiners available, may take weeks or longer.

## MANNER OF EXECUTION

6. Because this warrant seeks only permission to examine "**Target Device**" already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

7. I submit that this affidavit supports probable cause for a warrant to search "**Target Device**" and seize the items described in Attachment B.

Respectfully submitted,

_____
Benjamin Elizondo
Senior Special Agent
ICE Office of Professional Responsibility

Subscribed and sworn to before me
on April 10, 2020       :

_____
Ronald G. Morgan
UNITED STATES MAGISTRATE JUDGE